## No. 11,155.

### SUCCESSION OF STEPHEN WHITE.

1. When there is an heir present or represented in the State who opposes the application of the public administrator for the administration, and applies for it himself, the law accords the preference to such heir or his representative.

2. It does not affect the case that, at the date of the application by the public administrator, the absent heir was not represented; if, at the date of his timely opposition, he was duly represented, his rights are secured.

3.   A party who, with the exercise of the utmost possible diligence, has been un-
able to secure his proofs, which he shows are actually in the mail on their
way, is entitled to the trifling necessary delay, and is protected in such appli-
cation by Art. 464, C. P.

APPEAL from the Civil District Court for the Parish of Orleans.
      *King, J.*

*Chrétien & Suthon* for the Public Administrator, Appellee.

*J. L. Blair* for Opponent and Appellant.

The opinion of the court was delivered by

FENNER, J.   Stephen White died in this city on November 23,
1892, intestate, without issue and unmarried, and leaving no heir
then present or represented in the State.

Three days after his death the public administrator opened his
succession and applied for the administration, alleging that the
" succession is vacant and that there is property here requiring ad-
ministration."

On the 9th of December, 1892, and within the legal delay, J. P.
Blair, Esq., filed an opposition to this application, alleging that Mary
White Scahel, a sister of deceased, residing in Liverpool, was his
nearest of kin and his legal heir, and as such, she or her duly author-
ized representative was entitled to the administration by preference
over the public administrator; that she had appointed opponent as
her agent and authorized him to apply for her, but in his own name,
for the administration, and to administer for her and oppose all other
applications for administration; and he, therefore, opposed the ap-
pointment of the public administrator, and prayed for his own ap-
pointment as representative of the heir.

This opposition was forthwith set down for trial, on motion of the
public administrator, on December 19, 1892.

On that day the cause was called, and opponent applied for a brief
continuance thereof, in support of which he made the following ex-
ceptional showing of facts.   He proved that his constituent, Mrs.
Scahel, was a legal heir of the decedent and was living in Liverpool,
England; that on November 23, 1892, Mr A. C. Hutchinson, a friend
of Stephen White, wrote to Mary White Scahel, the deceased's sister,

residing in Liverpool, England, informing her of her brother's death and advising her to at once take steps to protect her rights in her brother's succession; that he suggested to her to appoint some one in this place her agent and attorney in fact, and, having previously obtained the consent of his counsel, the present opponent, he enclosed in his letter to Mrs. Scahel a full power of attorney in favor of opponent, directing her to execute and return the mandate, and to cable him when she had done so, as follows: "Mailed power today;" that on December 8, 1892, Mr. Hutchinson received the cablegram in the form agreed upon to indicate the execution and delivery (by mailing) of the power of attorney constituting opponent the representative in this State of Mary White Scahel; that the next day, December 9, opponent, accepting the mandate, applied under it for letters of administration and opposed the application of the public administrator; that on Monday, December 19, when the opposition came up for trial, sufficient time had not elapsed for the evidence of opponent's authority to act in the premises, the written power of attorney, to reach New Orleans in due course of mail; that letters mailed from Liverpool the day before the mailing of the power of attorney, namely, on December 7, had reached New Orleans Sunday, December 18; that on Monday, the 19th, the day of the trial and the expected arrival of the power of attorney, the train of the Louisville & Nashville Railroad on which such mail was carried was several hours late, and hence in all human probability the power of attorney would arrive later in the day or on the next day.

Here was certainly a showing of all possible diligence, indicating beyond doubt that opponent was actually the duly authorized representative of the absent heirs, and that the power of attorney appointing him as such had actually been executed and was not then producible as evidence, only because it was then in course of transmission by mail and had not had time to reach its destination. It was further made to appear that the condition of the succession was such that no harm would result from reasonable delay. We know too well the justice and fairness of the judge *a quo*, to suppose for an instant that he would have denied the reasonable demand of the opponent under such a showing if he had supposed that he was cutting him off from the opportunity of making proof which, if made, would have entitled him to a decree. Indeed, under this exhibition of exhaustive diligence, opponent stood under the clear protection of Art. 464, C. P.

" When a cause is called, a party who had not been able to procure the necessary evidence shall be entitled to a continuance, on proving that he has not sufficient time to get his proof, or has been prevented from doing so by some unforeseen cause."

But the judge assigned reasons for his action which, if founded in law, might have fully justified it.   He said:

" As the court understands the law this case has to be tried upon the state of facts that exists at the time that the application was made for the appointment of the public administrator in this case, and if at that time there were no heirs present, or there was no one present in this State to represent them, the law has placed the duty upon the public administrator to administer this estate and take charge of this property if the state of facts existed at that time.

" The court does not consider, in its discretion, that the application applied for should be granted, because the court considers that even if the power of attorney were present here, under the state of facts shown by those affidavits it would refuse the application of the heir and appoint the public administrator.   For these reasons the court refuses the continuance."

These reasons are equivalent to the maintenance of an exception of no cause of action against the opposition, and say, in effect, admitting all the allegations to be true, the opposition has no merit, and therefore a continuance would be useless.

We think, however, the judge committed a grave error in holding that the right of the public administrator depends on the state of facts existing at the moment of his application and is unaffected by any change of conditions supervening between that date and the date of his actual appointment.

Act 87 of 1870 says: " In all intestate successions, when there is no surviving husband or wife, or heir present or represented, in the State, the public administrator of the parish shall be *appointed* by the judge of the proper court to administer the same."

This language obviously refers to the date of appointment as the time at which it is to be determined whether the conditions on which his right depends exist, and if at that time it is made to appear that there is a " husband or wife, or heir present or represented, in the State," the application of the public administrator must yield to the preference accorded by the law to such surviving spouse or heir.   A contrary construction would involve the absurd

consequence that in every case of accidental or temporary absence of the spouse or heir of a dying man, the public administrator, by making immediate application, could defeat the rights of such absentees and the evident purpose of the law. The proposition is utterly untenable.

If the allegations of the opposition are true, opponent is undoubtedly entitled to the administratorship, and, under the showing of diligence made, he was entitled to the reasonable delay applied for for the production of his proofs.

It is therefore adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that the case be remanded to the lower court for a new trial according to law of the application of the public administrator and the opposition thereto, appellee to pay the cost of appeal.